UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-23313-GAYLES

WILLIAM and MARY TONELLI,
as Parents and Legal Guardians of
ELLA TONELLI, a minor,

 Plaintiffs,

   v.

NCL (BAHAMAS) LTD, a Bermuda
Company d/b/a NORWEGIAN
CRUISE LINE,

 Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant NCL (Bahamas) Ltd.'s Motion for Summary Judgment ("Motion"). [ECF No. 92]. The Court has reviewed the Motion, the record, arguments of counsel, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is **GRANTED**.

### FACTUAL BACKGROUND

**I. Ella's Infection and Diagnosis**

This maritime negligence action may test a reader's constitution, but it raises important questions about a cruise ship's duty to its passengers. Ella Tonelli ("Ella"), her parents, and Ella's aunt Sharon[1] boarded the NCL (Bahamas) Ltd. cruise ship *Escape* (the "*Escape*") on September 3, 2016. That same day, the *Escape* departed Miami for a seven-day cruise through the Caribbean. Ella was a healthy baby, just shy of her first birthday.

---

[1] For clarity's sake, the Court shall refer to Plaintiffs as "Ella," who is the real party in interest, except when referring to the titles of motions as filed.

Ella and her family spent the first few days of the trip enjoying the various amenities the *Escape* offered. On September 6, Ella and her family went off the *Escape* to an excursion on St. Thomas, where Ella and her father played on the beach and in the ocean. Like many other tourists, Ella's father urinated in the ocean in St. Thomas.[2] On September 7, Ella and her family disembarked for an excursion in Tortola, where they spent the day in much the same manner as their St. Thomas excursion. Ella and her family also ate food prepared onboard the *Escape*, and consumed water from the *Escape* daily.

Ella frequently played in the Kids Aqua Park and Kiddie Pool on the *Escape*. The area was scattered with signs that read: "No children in diapers or who are not toilet trained." These signs complied with the Center for Disease Control's ("CDC") Vessel Sanitation Program.

On September 8, Ella was playing in the kiddie pool under the supervision of her aunt. As many toddlers do, she frequently put toys from the water into her mouth. A baby boy was also playing in the pool. The baby boy appeared to Ella's aunt to be wearing a diaper. Ella's aunt observed a brown substance around the boy's diaper. She believed this was diarrhea and pulled Ella from the water. Before she was able to do so, Ella pulled a toy from the water and put it in her mouth.

On September 9, Ella became very ill with fever and diarrhea. Her symptoms were so severe that she suffered a seizure. She was emergency evacuated from the *Escape* to Jackson Memorial Hospital, where she was diagnosed with salmonella. Ella continued to show symptoms of salmonella, which carries an incubation period of up to 72 hours, for almost one year. Nine other passengers from the cruise reported symptoms of gastrointestinal illnesses, but no other passengers or crewmembers reported contracting salmonella—including no other reports of a child

---

[2] As set forth below, this is not a mere gratuitous fact.

ill with a bacterial disease. There are also no records of a fecal incident in the pool, though the *Escape*'s records indicate a vomit incident in the kiddie pool on September 8, the same day Ella claims she was infected.

## II. The Experts

Both parties have proffered experts to try to pinpoint the cause of Ella's illness.[3] A major issue arising from each expert opinion is that there was no way for anyone to test for salmonella in the pool, and no concrete way to eliminate other sources of infection. The Court summarizes each experts' testimony in turn.

Ella's expert, Dr. Harry Hull, is an epidemiologist who offered testimony that Ella "more likely than not" contracted salmonella from the fecal incident in the pool. [ECF No. 95-1, at 7]. Despite being unable to perform case studies (the standard procedure for review of epidemiological studies), Dr. Hull based his conclusions on the facts available to Ella. Dr. Hull ruled out causes attributed to the *Escape* itself, but not from Ella's excursions off the *Escape*.

Ella's second expert, Dr. Allison Osinski, holds a doctorate in physical education and is a certified pool operator who has developed pool safety measures for numerous resorts and cruise lines. Dr. Osinski opined that the signage around the kiddie pool was not adequate, the *Escape*'s pool personnel were not adequately trained, and the pool personnel were deficient in their duties on the *Escape*. Dr. Osinski did testify that the signs complied with the CDC's legal requirements.

Defendant's expert, Dr. Charles Teebagy, is an infectious disease physician. He opined that no reliable evidence exists to determine the source of the salmonella infection, and that Ella had no direct memory of her illness given her age.

---

[3] Ella initially raised three causation theories, but at argument, counsel indicated that they were focusing solely on the fecal incident in the pool as the most likely cause of her exposure.

Defendant's second expert, Dr. Barry Baker, opined that there is no evidence to prove that Ella contracted salmonella from the potable water, food, pools, or any other source on the *Escape*. Dr. Baker noted that he would have expected others to have contracted salmonella if it came from one of those sources.

### III. This Litigation

Based on Ella's injury, Ella's parents sued NCL (Bahamas) Ltd. for damages. Their Amended Complaint stated two claims: negligence and failure to warn.[4] [ECF No. 44]. Both parties have filed a litany of motions to narrow the issues for trial and the testimony admissible for Defendant's Motion. In addition to Defendant's Motion for Summary Judgment, the motions currently ripe for review are: (1) Plaintiffs' Motion to Strike and/or Limit Unreliable Defense Expert Opinions [ECF No. 91]; (2) Defendant's Motion to Strike Plaintiffs' Expert Alison Osinski [ECF No. 93] and; (3) Defendant's Motion to Strike Plaintiffs' Expert Dr. Harry Hull [ECF No. 95].[5]

Defendant has moved for summary judgment on Ella's claims, arguing that Ella has not demonstrated that Defendant had actual or constructive notice of salmonella on board the ship, and no proof of causation. [ECF No. 92]. The Court agrees. First, Ella has not established any facts indicating that Defendant had notice of salmonella on the *Escape* or that babies in diapers could spread salmonella. Second, even assuming a dangerous condition existed and Defendant was on notice that the condition existed, Ella has not established that Defendant proximately caused her injury.

---

[4] Ella pled negligence and failure to warn as two individual claims, but failure to warn is a prerequisite to a claim for negligence under maritime law. *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1350–51 (S.D. Fla. 2016). The Court will consider the claims accordingly.

[5] Also ripe for review, though not directly relevant to the instant Motion, are Plaintiffs' Motion for Judicial Notice Pursuant to FRE 201 [ECF No. 126], Plaintiffs' Motion in Limine to Preclude Speculative and Irrelevant Testimony and Argument [ECF No. 127], and Defendant's Omnibus Motion in Limine [ECF No. 128].

# DISCUSSION

## I. Summary Judgment

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## II. Cruise Ship Negligence

Maritime law governs the liability of a cruise ship for a passenger who falls ill on the cruise. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). Under maritime law, "[a] carrier by sea . . . is not liable to passengers as an insurer, but only for its negligence." *Kornberg*

*v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984). In other words, "the owner of a ship in navigable waters owes passengers a 'duty of reasonable care' under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). To prevail on her negligence claim, then, Ella must prove that (1) Norwegian had a duty to protect her from a particular injury, *i.e.*, salmonella infection; (2) Norwegian breached that duty; (3) the breach actually and proximately caused her injury; and (4) she suffered actual harm. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014). "The failure to show sufficient evidence of each element is fatal to a plaintiff's negligence cause of action." *Taiariol v. MSC Crociere, S.A.*, No. 15-61131, 2016 WL 1428942, at *3 (S.D. Fla. Apr. 12, 2016), *aff'd* 677 F. App'x 599 (11th Cir. 2017) (citing *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) ("Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of [the] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment.")).

### A. Duty of Care and Notice

"Pursuant to federal maritime law, the duty of care that cruise operators owe passengers is ordinary reasonable care under the circumstances, 'which requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition.'" *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1350–51 (S.D. Fla. 2016) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)). A cruise ship operator's duty to warn extends to known dangers that are neither apparent nor obvious to passengers. *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013). Assuming *arguendo* that the risk-creating condition was not open and obvious, Norwegian's liability thus turns on whether it had notice—either actual or constructive—of the alleged risk-creating condition. *See Keefe*, 867 F.2d

at 1322 (stating that the standard of ordinary reasonable care under the circumstances "requires . . . that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure").

Because failure to warn is a prerequisite to a maritime negligence claim, the Court's analysis begins there. Ella argues that Defendant had notice of the possibility of salmonella being transmitted by non-potty-trained children in the kiddie pool, and that Defendant failed to adequately patrol or monitor the kiddie pool to ensure that kids who were not potty-trained or in diapers were kept out. Defendant argues that there is no evidence that it had notice that: (1) salmonella was a risk-creating condition on board the *Escape*, (2) children in diapers posed a risk of spreading salmonella, or (3) the pool operators were aware of a fecal incident in the pool prior to Ella's removal.

In a cruise ship negligence case, "[c]ourts routinely grant summary judgment in a defendant's favor when a plaintiff fails to adduce evidence on the issue of notice." *Taiariol*, 2016 WL 1428942, at *4 (citing, *e.g.*, *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1324 (S.D. Fla. 2015) ("Because Plaintiff has failed to cite any evidence in the record showing that [Defendant] had actual or constructive notice of the risk-creating condition alleged in the complaint . . . summary judgment in favor of [Defendant] is appropriate in this matter.")). Furthermore, "[c]ourts have also found at this stage of disposition [that] 'mere implication of actual or constructive notice is insufficient to survive summary judgment.'" *Id.* at *5 (quoting *Lipkin*, 93 F. Supp. 3d at 1323). A plaintiff must show "specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action." *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013) (citation and internal quotation marks omitted). At the

summary judgment stage, plaintiff must proffer "specific facts" to support her claim—not "mere implication." *Id.*

According to Ella, the crux of the issue here is whether the signs barring children not potty-trained from the pool indicated that Defendant had notice that children in diapers were a risk-creating condition. Warning signs may constitute proof of notice. *E.g.*, *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018); *Guevara v. NCL (Bahamas) Ltd.*, No. 15-24294-cv, 2017 WL 6597981, at *3–7 (S.D. Fla. Sept. 29, 2017) (citing cases). But in those cases, the sign at issue was either erected and contained language warning about *transitory* dangers (e.g., "Slippery When Wet") or was not placed by the cruise ship itself. *See e.g.*, *Taiariol*, 2016 WL 1428942, at *6 (finding a "watch your step" sticker insufficient to demonstrate notice because it was placed by the manufacturer, not the cruise ship, and no evidence existed indicating that the steps were actually dangerous). And courts have found that signs don't constitute notice where the signs cited no specific, transitory dangers. *Id.*

The relevant language on the sign at issue here read: "No children in diapers or who are not toilet trained." The parties do not dispute that the language and structure of the sign falls within federal regulations, specifically those of the CDC. But Defendant's sign did not warn of any specific or transitory danger—such as salmonella exposure—caused by children who wear diapers or are not potty-trained. Nor was it required to do so: Defendant placed the sign to warn against children entering the pool unless they could hold their bowels or bladder.

Ella counters that Defendant's corporate representative's testimony that children in diapers were a "dangerous condition" establishes notice. *See* [ECF No. 103, at 17]. Defendant's corporate represented testified at her deposition as follows:

A: "I believes [sic] children in diapers that are not toilet trained should not be in the pool."

Q: "Is that the dangerous condition?"

A: "Yes. Children in diapers who are not toilet trained should not be in the pool."

[*Id.*] But that testimony does not reveal that Defendant was concerned about salmonella in the pool. Indeed, Defendant's representative did not reference salmonella specifically as a danger: she just said that children in diapers are a dangerous condition. There is no evidence that Defendant was on notice as to the danger presented specifically by salmonella from children wearing diapers. Nor does the evidence reveal that Defendant was on notice that salmonella was otherwise present on board the *Escape*. In fact, there has never been a report of salmonella on the *Escape*. Without such evidence, Ella cannot establish that salmonella was present or the requisite notice.

Finally, Defendant never had a chance to rectify the purported problem. Plaintiffs may demonstrate constructive notice by demonstrating that "a dangerous condition . . . existed for a sufficient length of time, which Florida courts have found to be 15-20 minutes." *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1192–93 (S.D. Fla. 2016) (constructive notice existed where video footage revealed that the dangerous condition existed for at least fifteen minutes prior to the accident). But here, Ella was removed from the pool immediately after her aunt saw the brown substance, thus solving the problem before Defendant had a chance to do so.[6]

### B. Causation

The parties agree there is no direct evidence that Ella's salmonella exposure came from the pool. So in order to prove her claim circumstantially, Ella has built her causation chain as follows: (1) she was in the kiddie pool playing with another toddler, (2) the other toddler was wearing a

---

[6] Although Defendant did not argue that stool in the water was an open and obvious condition, the Court finds that it was under these circumstances. A cruise ship's duty to warn extends only to dangers that are not open and obvious. *See Salazar v. Norwegian Cruise Line Holdings, LTD., and NCL (Bahamas) Ltd.*, 188 F. Supp. 3d. 1312, 1316 (S.D. Fla. 2016). The risk of placing children who are not potty-trained into a pool is apparent for reasons not necessarily related to salmonella exposure. It is not clear from the record whether Ella wore a diaper in the pool like the other child. Given her age, the Court assumes she did and that she was not toilet-trained. Ella's aunt, having placed Ella in the pool, was aware of the risk of children in diapers in the pool.

diaper or was not potty-trained, (3) a brown substance was in the kiddie pool near the toddlers, (4) she put a toy in her mouth before her aunt removed her from the water, and (5) that one can infer from these facts that the brown substance was salmonella-laced fecal matter that made her ill. Ella argues that these facts, supported by Dr. Hull's expert opinion, constitutes sufficient circumstantial evidence to establish a genuine issue of material fact as to whether the fecal matter in the pool caused Ella's salmonella. Defendant counters that Ella's causation chain is supported solely by speculation, negating any genuine issue of material fact.

"Federal courts exercising admiralty jurisdiction may be guided by the extensive body of state law applying proximate causation requirements and from treatises and other scholarly sources." *In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1171, 1183 (S.D. Fla. 2013) ("Royal Caribbean") (internal quotations omitted). In Florida, stacking inferences to reach a conclusion is permitted only if the original inference is established without question:

> [A] fact may be established by circumstantial evidence as effectively and as conclusively as it may be proved by direct positive evidence. The limitation on the rule simply is that if a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.

*Nielsen v. City of Sarasota*, 117 So. 2d 731, 733 (Fla. 1960). "When the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced," the court must grant summary judgment. *Royal Caribbean*, 991 F. Supp. 2d at 1183 (citing *Gooding v. Univ. Hospital Building, Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984)); s*ee also Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 958–59 (11th Cir. 2014) ("Impermissible inferences only exist, however, when no direct evidence is presented on negligence or causation and a jury infers causation based on an inference of negligence.").

The Court finds the decision of Judge Scola in *Royal Caribbean* instructive. There, plaintiff proffered the following theory of negligence: (1) the accident occurred within 100 yards of the dock, (2) that plaintiff was riding jet ski six, (3) jet skis seven, eight, or nine hit her and caused her injury, and (4) one can infer from these facts that the cruise ship employee released jet skis too quickly, thus breaching its duty of care. 991 F. Supp. 2d at 1184. To be sure, this was a possible cause of her injury. But it was not the only reasonable conclusion: plaintiff herself could have been driving her jet ski carelessly, resulting in her injury. *Id.* And plaintiff failed to provide evidence removing that theory of causation. *Id.* Judge Scola found that "inferring specific links in a chain of cause from the occurrence of a specific event" was "logically impermissible" and concluded that, as a matter of law, proximate causation could not be established.[7] *Id.* (citing *Estate of Brennan v. Church of Scientology Flag Serv. Org., Inc.*, 832 F. Supp. 2d 1370, 1374 (M.D. Fla. 2011)).

Here, as in *Royal Caribbean*, Ella's conclusion ignores at least one other reasonable conclusion: that Ella's infection came from her excursion in St. Thomas or Tortola. Those excursions, as Defendant points out, were within the window of salmonella incubation. And (unfortunately), oceans are also filled with bacteria and other hazards from, for example, people's urine. Indeed, Ella's own father admitted to using the ocean to relieve himself during one of the excursions.[8] So it is not inconceivable that Ella could have gotten sick during her excursions.

Ella cites to Dr. Hull's report as concrete proof that Ella's illness must have come from the fecal incident in the pool. [ECF No. 95-1]. Defendant argues that Dr. Hull's expert opinion is based purely on speculation and is thus unreliable. In Florida, cases involving complicated medical

---

[7] Judge Scola did find that causation was met on plaintiff's second theory, that Royal Caribbean should have known a third party involved in the accident was not competent to pilot the jet ski. *Id.* at 1186. But there, no inferences or speculative facts broke the chain of causation or resulted in inappropriate stacking of inferences. *Id.*
[8] The record does not indicate that urine contains salmonella. The Court merely refers to this instance as one *possible* way in which bacteria can transmit in the ocean.

11

questions require expert opinions to establish causation. *See Faile v. Dillard's Inc.*, No. 5:11-CV-41-RS-CJK, 2011 WL 13192673, at *2 (N.D. Fla. Nov. 7, 2011), *aff'd sub nom. Faile v. Estee Lauder Travel Retail Servs., Inc.*, 480 F. App'x 951 (11th Cir. 2012) (citing *Scott v. U.S.*, 127 F. Supp. 422, 424 (N.D. Fla. 1955) and *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312 (11th Cir. 2011)). Epidemiological studies, to be conclusive, must not rely on inaccuracies or methodological weaknesses. *See In re Denture Cream Prod. Liab. Litig.*, 795 F. Supp. 2d 1345, 1354 (S.D. Fla. 2011). And, to be conclusive, any medical opinions must be based on hard facts or established scientific methodology that eliminates other reasonable inferences. *Id.* "'Reasonable medical probability' is the functional equivalent of preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1320 (11th Cir. 1999).

Dr. Hull's expert report, although providing a review of the different potential causes from the *Escape*, does not examine all the potential causes of her illness. Notably, his report does not account for the entirety of her excursions, even though they are within the incubation window for salmonella. [ECF No. 95-1, at 5-7]. And although the Court recognizes the challenge of Ella's position—being able to establish salmonella without the availability of any positive culture—Ella has not excluded other reasonable sources of her illness, making her theory too speculative to present a genuine issue of material fact. Thus, although the Court does not take the step of excluding Dr. Hull's testimony, the Court does not find it sufficient to exclude the reasonable possibility of other sources of contamination.

Because the Court finds that summary judgment can be granted on both Counts, the Court need not reach the other issues Defendant argues in the Motion.

## CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant NCL (Bahamas) Ltd.'s Motion for Summary Judgment is **GRANTED**. This action is **CLOSED** for administrative purposes and all pending motions are **DENIED as MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26th day of February, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE